A92A2005. SISK v. THE STATE.
(429 SE2d 274)

ANDREWS, Judge.

Defendant appeals his conviction of one count of aggravated child molestation and one count of child molestation.[1]

Viewed in favor of the jury's verdict, the evidence showed that, for about two months before the charged acts, Sisk had been dating Ms. Slaten, the great-aunt of C. C. and her brother A. C. Ms. Slaten had legal custody of the children and they called her their mother. C. C. was 11 years old and her brother was 13. A. C. had spent the night with Sisk at his trailer on four or five previous occasions, sometimes by himself. C. C. had spent the night with Sisk previously only once or twice, and only in the company of her brother.

On July 25, 1991, Sisk ate dinner with the children and Ms. Slaten at the Slaten home. After dinner, the children were playing on a trampoline outside when Sisk approached and told them that he would wash the dishes for them and ride bicycles with them if they would spend the night with him. They agreed. Later that evening,

---

[1] Defendant was also charged and convicted as an habitual offender, OCGA § 17-10-7.

Ms. Slaten took Sisk and the children back to his trailer home. She assisted him in cleaning up the trailer, including making the bed in his bedroom. They all watched movies for awhile. After Ms. Slaten left, the children and Sisk continued to watch a movie. Sisk had taken a shower before sitting down to watch the movie. A. C. had previously seen the movie's ending and, as it approached, he turned to tell Sisk and C. C. who had been sitting on the couch behind him. They were not there and A. C. looked down the hallway and saw his sister leaving Sisk's bedroom.

C. C. testified consistently with her brother as to the sequence of events. She further said Sisk came out of the bath after his first shower wearing a pair of running shorts. He sat on the couch for a few minutes, then reached over and took her wrist and took her with him into the bedroom. Once there, he shut the door, took down her panties, committed oral sodomy on her and then penetrated her.[2] He told her it would not hurt and not to tell. When she pulled her pants back on and left the bedroom, A. C. was standing at the bedroom door and asked what they were doing. She told him they had only been talking and went into the bathroom. A. C. noticed that the bed covers were messed up. When he went into the bathroom after she exited, he noticed a substance in the toilet bowl which he described as a "white worm." A. C. described his sister as pale and nervous after this. Sisk then took another shower and went to bed.

After returning home the next day, A. C. again asked C. C. what had happened because she still looked pale and nervous and she told him. He told Ms. Slaten and she took C. C. to be examined at the hospital. There and several days later, C. C. told the Department of Family & Children Services' representative and the deputy sheriff of the molestation. She signed a written statement on July 29, 1991. She testified at the trial to these events and acknowledged that, a few days before the trial, she had lied and told Ms. Slaten she had made the story up because she wanted to make Ms. Slaten happy. At Ms. Slaten's request, she also called a pastor and another relative and repeated this retraction to them.

Sisk testified and acknowledged the children stayed with him that night, although he said they made the proposal. He denied taking more than one shower and said he and C. C. only talked about family issues for about five minutes in his bedroom after she had followed him there while he was preparing to shower.

The doctor who examined C. C. found no physical evidence of intercourse, but stated that was not unusual.

The State filed its notice of intent to present evidence of similar

---

[2] C. C. described these acts in words appropriate to her age.

crimes pursuant to USCR 31.1 on October 1, 1991, before the February 1992 trial. No written response was filed by Sisk. The hearing required by USCR 31.3 (B) was held immediately before the trial. The evidence allowed to be introduced was testimony by the arresting officer in the 1984 incidents which involved Sisk's two nieces, aged four and five at the time. Sisk admitted in the written statement which he gave the officer that he had fondled each girl between her legs after they came out of his bathroom undressed. He pled guilty to two counts of child molestation.

1. There being evidence sufficient to convince any rational trier of fact of the existence of the essential elements of the crimes, denial of the motion for new trial on the general grounds was not error and the judgment is affirmed. *Jackson v. Virginia*, 443 U. S. 307, 310 (99 SC 2781, 61 LE2d 560) (1979); *Baldwin v. State*, 153 Ga. App. 35, 37 (264 SE2d 528) (1980).

2. Sisk's first enumeration is that the court erred in allowing into evidence the prior child molestation conviction because it was "presented to the jury in violation of Rule 31.3 of the Uniform Superior Court Rules."

The argument made in support of this enumeration cites only *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991), and is that the conviction should be reversed because "no determination was made on the record by the trial court that each of the three showings as required by Rule 31.3 . . . was met."

At the pretrial hearing on this issue, the objection made was that "we would object to the introduction of such evidence as extremely prejudicial in this case. I don't really see any probative value that it could have. These events [like acts] . . . took place seven years ago, . . . I don't think the circumstances are sufficiently similar to warrant introduction. . . ." Counsel then incorrectly stated that the State did not have to prove any "particular motive" and that motive was not an issue. OCGA § 16-6-4 (a) requires that the State prove the acts were done with the intent "to arouse or satisfy the sexual desires of . . . the person." *Staggers v. State*, 120 Ga. App. 875, 876 (2) (172 SE2d 462) (1969).

Further, counsel asked the court, if it deemed the acts admissible, to allow in only the statement of Sisk and not the sentence imposed. The court then "granted the motion" of the State and also instructed the State not to introduce the sentence. The court then inquired of both parties, "Anything else before we bring the jury in?" Defense counsel responded "No, sir." At the time the evidence was introduced before the jury,[3] the only objection was the "renewal" of

---

[3] The proof was in compliance with the requirements of *Stephens v. State*, 261 Ga. 467,

those previously made.

"Appellant's sole objection in the trial court was that the prejudicial impact of the prior convictions on the jury outweighed the probative value thereof. In his brief on appeal, however, appellant urges only that the State [and the court] failed to make the affirmative showings [and rulings] required by *Williams*, [supra]. '(N)othing in . . . *Williams* suggests that the Supreme Court has determined to dispense with the long-standing rule that, to warrant appellate consideration, an objection to the admission of evidence must first have been raised in the trial court. . . . In the absence of such an objection, however, any discussion of . . . *Williams* in the instant case is inappropriate.' *Hunter v. State*, 202 Ga. App. 195, 198 (3) (413 SE2d 526) (1991)." *McGaha v. State*, 204 Ga. App. 248, 249 (2) (418 SE2d 802) (1992).

*Judgment affirmed. Birdsong, P. J., concurs. Beasley, J., concurs as to Division 1 and in the judgment.*

DECIDED MARCH 2, 1993 —
RECONSIDERATION DENIED MARCH 16, 1993.

*J. Tracy Ward*, for appellant.
*Jack O. Partain III, District Attorney, David W. McLeod, Assistant District Attorney*, for appellee.

